Kyowa Seni, Co., Ltd., Plaintiff,

against
ANA Aircraft Technics, Co., Ltd., ANA Base Maintenance Technics, Co., Ltd., All Nippon Airways, Co. Ltd., ANA Holdings, Inc., All Nippon Airways Co., Ltd., Defendant.


650589/2017

Saliann Scarpulla, J.

The following e-filed documents, listed by NYSCEF document number 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 55, 56, 58, 60, 61, 64, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 154, 156, 158, 159, 160, 162, 163, 166, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 57, 62, 63, 65, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 155, 157, 164, 167 were read on this application to/for Dismiss. Upon the foregoing documents, it is
In this action to recover damages for fraud, defendants All Nippon Airways, Co. Ltd., ANA Aircraft Technics, Co., Ltd., ANA Base Maintenance Technics, Co., Ltd., ANA Holdings, Inc., and All Nippon Airways Co., Ltd. (together, the "ANA Companies") move to dismiss plaintiff Kyowa Seni, Co., Ltd.'s ("Kyowa"), complaint based on documentary evidence, res judicata, statute of limitations, failure to state a cause of action, lack of personal jurisdiction and forum non conveniens. The ANA Companies also move for sanctions. Motion sequence numbers 001 (motion to dismiss) and 002 (sanctions) have been consolidated for disposition.
ANA Aircraft Technics Co., Ltd. ("ANA Technics") maintained the fleet of planes operated by its parent, ANA. In February 2003, ANA Technics and Kyowa entered into a Memorandum of Understanding (the "MOU"), pursuant to which Kyowa agreed, among other things, to manufacture seat covers for ANA Technics beginning on October 1, 2003.
According to the complaint, ANA developed the specifications for manufacturing the seat [*2]covers that ANA Technics and Kyowa produced. Kyowa alleges that by the terms of ANA's own manual, the ANA Companies were required to develop standards for testing the airworthiness of the parts that they and their subcontractors produced, but they failed to do so.
ANA Technics allegedly told Kyowa to affix TSO C127a [FN1]
labels onto the seat covers that Kyowa produced. Kyowa alleges that at the time of the parties' agreement for seat cover production, the ANA Companies were aware that Kyowa was not licensed by the FAA as a manufacturer of seat covers. Kyowa further alleges that, unbeknownst to it, the ANA Companies themselves never obtained a license from the FAA to produce seat covers. As per the complaint, the Japan Civil Aviation Bureau ("JCAB") also required fire retardancy testing of seat covers.
Shortly after Kyowa commenced manufacturing, ANA Technics allegedly directed Kyowa to execute certificates that the seat covers had been flammability tested, which Kyowa asserts it did in the belief that testing was performed after it produced the seat covers. In the summer of 2004, Kyowa states that it discussed with ANA Technics' president, Tsuneyoshi Saito ("Saito"), and other executives its concerns about the above-discussed directive. At that time, Kyowa allegedly requested confirmation that ANA Technics had conducted all of the necessary fire retardancy tests and possessed the certifications for the TSO C127a label. After ANA Technics failed to respond to Kyowa's requests, Kyowa claims that it informed ANA Technics that it would not execute any additional certificates of fire retardancy until it received confirmation that the testing was performed.
On October 1, 2004, ANA Technics terminated the MOU, effective January 31, 2005, stating that Kyowa's work was substandard. According to Kyowa, ANA Technics never objected to Kyowa's work prior to the MOU's cancellation. Kyowa further alleges that in 2005, ANA Technics revoked Kyowa's registration with the JCAB. Kyowa alleges that the MOU's cancellation caused damage to its reputation as well as financial losses.
The complaint states that the ANA Companies continued to use seat covers with TSO C127a labels, despite not being tested for flammability, until at least March 2013, when JCAB directed the ANA Companies to erase the improper TSO C127a labels.
Kyowa previously brought a lawsuit in Japan against the ANA Companies (the "Japanese Action").[FN2]
In the Japanese Action, Kyowa alleged, among other things, that ANA Technics lied about its authority to affix TSO C127a labels, and that ANA Technics and ANA terminated Kyowa's contract to conceal the unlawful TSO C127a labeling.[FN3]

The Japanese trial court dismissed Kyowa's claims in their entirety, ruling that neither ANA Technics nor ANA had any liability to Kyowa. Dismissal of the Japanese Action was upheld on appeal in Japan in March 2010. In sum, the Japanese courts found that ANA's use of [*3]TSO C127a labels was not relevant to Kyowa's claims, because ANA is subject to regulation by the JCAB rather than the FAA.
After "discovering," in July 2015, additional support for its claims — through an FAA letter which stated that the ANA Companies did not have a TSO C127a license — Kyowa filed a motion for retrial with the Tokyo High Court on August 18, 2015.[FN4]
The Tokyo High Court denied Kyowa's motion on March 30, 2016.
On February 2, 2017, Kyowa filed the complaint in this action, based on the same acts and transactions as set forth in the Japanese Action. In their motion to dismiss, the ANA Companies contend that Kyowa bases its New York fraud claims on the same core allegations underlying the "fraud" claims that were dismissed in Japan, as well as on the FAA Letter that the Japanese courts considered and rejected as a basis for reviving Kyowa's claims. Consequently, the ANA Companies move to dismiss the complaint on the following grounds: (1) the Court lacks personal jurisdiction over the ANA Companies; (2) as a matter of comity, the Japanese courts' decisions dismissing Kyowa's claims are entitled to res judicata; (3) Kyowa's claims are time-barred; (4) forum non conveniens; and (5) failure to state a claim.
Discussion
On a motion to dismiss pursuant to CPLR § 3211 (a), the court is required to accept the facts alleged in the complaint as true and grant the plaintiff every favorable inference, deciding only "whether the facts as alleged fit within any cognizable legal theory." Sokoloff v. Harriman Estates Dev. Corp., 96 NY2d 409, 414 (2001); See also Leon v. Martinez, 84 NY2d 83, 87-88 (1994). Further, although plaintiff bears the ultimate burden of proof concerning personal jurisdiction, "'to defeat a CPLR 3211(a)(8) motion to dismiss a complaint, the plaintiff need only make a prima facie showing that the defendant is subject to the personal jurisdiction of the court.'" Shatara v. Ephraim, 137 AD3d 1248, 1249 (2d Dept. 2016) (citation omitted).
Personal Jurisdiction
Courts may exercise general jurisdiction over a foreign corporate defendant either in the forum where the corporation is incorporated or has its principal place of business, or in an "exceptional case," where the corporation's ties with the forum are so constant and pervasive "as to render [it] essentially at home in the forum State." Daimler AG v. Bauman 571 U.S. 117, 122, 137 134 S.Ct. 746, 751, 760 and n 19 (2014) (internal citation omitted); see also BNSF Ry. Co. v. Tyrell, 137 S. Ct. 1549 (2017) (same). There is no basis for general jurisdiction under CPLR § 301 where a defendant "is not incorporated in New York and does not have its principal place of business in New York." Magdalena v. Lins, 123 AD3d 600, 601 (1st Dept. 2014).
The ANA Companies argue that this Court lacks general jurisdiction over them because they are neither incorporated nor "essentially at home" in New York. Kyowa counters that this Court has general jurisdiction over ANA (and its legal successor ANA Holdings) and ANA Ltd. [*4]because both entities registered in New York and expressly appointed the Secretary of State as their agent for service of process. Kyowa's "consent by registration" theory of general jurisdiction, however, is not the law in New York.
After the Daimler case, most New York courts have rejected general jurisdiction by consent based on corporate registration. See, e.g., Famular v. Whirlpool Corp., 2017 WL 2470844, at *4 (S.D.NY June 7, 2017) (" a foreign defendant is not subject to the general personal jurisdiction of the forum state merely by registering to do business with the state"); Sae Han Sheet Co. v. Eastman Chemical Corp., 2017 WL 4769394, at *6 (S.D.NY Oct. 19, 2017) ("In light of Daimler, the more recent authority in this district has held that corporations do not consent to general jurisdiction when they register under the various New York registration statutes. "); Taormina v. Thrifty Car Rental , 2016 WL 7392214, at *6 (S.D.NY Dec. 21, 2016).
In Taormina, the plaintiff made two arguments in favor of the existence of general jurisdiction: 1) defendant was essentially at home in New York because the defendant's SEC filing showed that it derived a substantial portion of its revenues from key leisure destinations including New York; and 2) defendant consented to general jurisdiction because it registered to do business in New York. Id. at *5-6. The court rejected both of these purported grounds for the exercise of general jurisdiction and found that 1) a defendant with branch offices in the forum state that is incorporated and headquartered elsewhere falls short of the relationship required by Daimler; and 2) in light of any post-Daimler authority on the issue of consent by registration, mere registration and the accompanying appointment of an in-state agent under New York Business Corporation Law do not confer general jurisdiction because the statutes do not expressly require consent to general jurisdiction. Id . at *5-7.
I agree with the reasoning set forth in Taormina, and find that Kyowa's general jurisdiction arguments fail. First, that the ANA Companies, which are incorporated and headquartered in Japan, derive some revenue from their New York flight operations, is plainly insufficient to render the ANA Companies "essentially at home" in New York. Second, the ANA Companies' simple registration in New York is an insufficient grounds for this Court to exercise general jurisdiction over them.[FN5]
 See Brown v. Lockheed Martin Corp., 814 F.3d 619, 640 (2d Cir. 2 016) (stating that "[i]f mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction—nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and Daimler's ruling would be robbed of meaning by a back-door thief."). In sum, there is no basis for general jurisdiction over the ANA Companies under CPLR § 301.
Next, Kyowa asserts that this Court has specific jurisdiction over ANA and ANA, Ltd. under New York's long-arm statute. Particularly, Kyowa states that jurisdiction exists pursuant to: 1) CPLR § 302(a)(1) "because ANA and its successor ANA Ltd. have continuously transacted business and conducted their airline operations in New York and contracted for services [*5]including for maintenance, and hired employees, and contracted to fly passengers to and from New York, and purchased goods and supplies in New York sin ce on or about January 11, 1988" and 2) CPLR § 302(a)(2) "because between 1998 and sometime after March 2013, on a daily basis, ANA and ANA Ltd. have been flying passengers to and from New York on airplanes with seat covers that ANA and ANA Ltd. fraudulently caused to be labeled with "TSO C127a" mark intending to evidence that the seat covers were manufactured in compliance with the FAA safety standards to defraud the United States authorities and the public." In opposition, the ANA Companies contend that Kyowa's specific jurisdiction arguments are meritless, and I agree.
New York's long-arm statute, CPLR § 302(a)(1), permits the exercise of personal jurisdiction over a defendant which transacts business in the state that is substantially related to a plaintiff's claims. The statute states:
(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
1. transacts any business within the state or contracts anywhere to supply goods or services in the state
There is a two-prong inquiry under CPLR § 302(a)(1). The first prong requires that the defendant "conducted sufficient activities to have transacted business in the state," and the second prong requires that "the claims [ ] arise from the transactions." Rushaid v. Pictet & Cie, 28 NY3d 316, 323 (2016); see also D & R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro, 29 NY3d 292, 298 (2017). The transacting business requirement may be satisfied by proof of one transaction, so long as the claim arises from that same transaction. Rushaid, 28 NY3d at 323 n 4.
Notably, "[i]t is not enough that a non-domiciliary defendant transact business in New York to confer long-arm jurisdiction." D & R Global Selections, 29 NY3d at 298. A plaintiff's claim must have an "articulable nexus" or "substantial relationship" with the defendant's transaction of business, and although this inquiry is "relatively permissive," the claim must not be "completely unmoored" from the transaction. Id. at 298-299 (internal quotation marks and citations omitted).
Here, two Japanese parties negotiated and signed an MOU in Japan and the performance pursuant to the MOU took place in Japan as well. Thus, although the complaint states that the ANA Companies' passenger plane "destinations in the United States include inter alia John F. Kennedy International Airport, located within the City of New York and the State of New York," it utterly fails to state a specific "articulable nexus" between New York and the claims arising out of the MOU's termination and the alleged misrepresentations/fraud regarding the TSO C127a labels.
Kyowa also argues that New York may assert long-arm jurisdiction over ANA pursuant to CPLR § 302(a)(2), which provides that "a court may exercise jurisdiction over any non-domiciliary . . . , who in person or through an agent commits a tortious act within the state."
The complaint, however, fails to allege any tortious act that the ANA Companies committed in New York. See Storch v. Vigneau, 162 AD2d 241, 242 (1st Dept. 1990) (finding that plaintiff failed to establish jurisdiction under CPLR § 302(a)(2) where the complaint and affidavits "do not allege a single tortious act that defendant committed within New York."). [*6]Significantly, the alleged misrepresentations transpired in Japan, the manufacture of the seat coverings occurred in Japan, and any alleged harm to Kyowa occurred in Japan.
Thus, I dismiss the complaint against the ANA Companies based on lack of personal jurisdiction. As a result, I do not address the other, equally meritorious dismissal grounds raised by the ANA Companies in their motion to dismiss.
Sanctions
The ANA Companies also move, pursuant to 22 NYCRR 130-1.1 (a), for an award of sanctions and costs, including attorney's fees, against Kyowa. The ANA Companies argue that: 1) Kyowa's NY Complaint is completely meritless and its "insistence on re-litigating its failed Japanese claims here—despite their manifest legal infirmities—compels the conclusion that it brought this action to 'harass or maliciously injure' the ANA Companies;" and 2) Kyowa lacks any good faith basis for bringing "patently false allegations about safety matters."
Kyowa argues, among other things, that the complaint in this action is not frivolous because the FAA letter shows that it was "victim" of fraud by the ANA Companies and nothing contained in the complaint was false or misleading.
At oral argument, I asked Kyowa to voluntarily withdraw this action based on the numerous meritorious grounds asserted by the ANA Companies in support of dismissal, but Kyowa subsequently opted not to withdraw.
Pursuant to 22 NYCCR § 130-1.1,
(a) The court, in its discretion, may award to any party or attorney in any civil action or proceeding . . . costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct.
For the purposes of the statute, conduct is deemed frivolous if: "(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false. 22 NYCRR 130-1.1 [c]; see Bell v. State of New York, 96 NY2d 811, 812 (2001); Premier Capital v. Damon Realty Corp., 299 AD2d 158, 158 (1st Dept. 2002). The court has discretion as to both the imposition and amount of sanctions. See Seldon v. Bruno, 204 AD2d 180, 180 (1st Dept. 1994); Matter of Metamorphosis Constr. Corp. v. Glekel, 247 AD2d 231, 231 (1st Dept. 1998).
This action is meritless and without a good faith basis. There is simply no basis for a New York court to assert jurisdiction over a dispute between Japanese entities, a dispute which has no specific connection to New York or its citizens. Moreover, Kyowa commenced this second litigation in New York even though the dispute was already fully litigated in Japan. The allegations in this action are identical to the allegations in the Japanese Action, except that Kyowa states that it "discovered" the FAA letter after the Japanese Action. In fact, Kyowa's fraud claims were rejected, on the merits, by the Japanese courts. And, the Tokyo High Court rejected Kyowa's motion for retrial based on the FAA letter one year prior to Kyowa's commencement of this New York action.
Because the claims asserted by Kyowa against the ANA Companies have been fully litigated in Japan, and because Kyowa's arguments in support of personal jurisdiction in this action lack of merit, sanctions are warranted against Kyowa. See, e.g., Pfeiffer v. Imperatore, 158 [*7]AD3d 497, 497 (1st Dept. 2018) (holding that the motion court providently exercised its discretion in issuing sanctions against plaintiff where plaintiff brought fifth lawsuit against defendant based on the same transaction with the same allegations); Bihn v. Connelly, 2018 WL 2709955 at *2 (1st Dept. June 6, 2018) (finding that the trial court properly awarded sanctions in the form of attorney's fees and costs to the defendants "upon a finding that the action was completely without merit in law and could not be supported by a reasonable argument for an extension, modifications, or reversal of existing law"). Accordingly, I grant the ANA Companies' sanctions motion to the extent that I award them attorney's fees and costs reasonably incurred by them in litigating the action before me.[FN6]

In accordance with the foregoing, it is
ORDERED that the motion by defendants All Nippon Airways, Co. Ltd., ANA Aircraft Technics, Co., Ltd., ANA Base Maintenance Technics, Co., Ltd., ANA Holdings, Inc., and All Nippon Airways Co., Ltd. to dismiss plaintiff Kyowa Seni, Co., Ltd.'s complaint is granted and the complaint is dismissed in its entirety as against the defendants and the Clerk is directed to enter judgment in favor of defendants; and it is further
ORDERED that the motion by defendants All Nippon Airways, Co. Ltd., ANA Aircraft Technics, Co., Ltd., ANA Base Maintenance Technics, Co., Ltd., ANA Holdings, Inc., and All Nippon Airways Co., Ltd. for sanctions is granted to the extent that I award defendants' costs and attorney's fees incurred in this action; and it is further
ORDERED that a hearing shall be conducted before a Special Referee on: (1) the amount of reasonable attorney's fees and costs to be awarded to defendants All Nippon Airways, Co. Ltd., ANA Aircraft Technics, Co., Ltd., ANA Base Maintenance Technics, Co., Ltd., ANA Holdings, Inc., and All Nippon Airways Co., Ltd. The Special Referee is to report to this Court with all convenient and deliberate speed, except that, in the event of and upon the filing of a stipulation of the parties, as permitted by CPLR § 4317, the Special Referee, or another person designated by the parties to serve as referee, shall determine the attorneys' fees and costs; and it is further
ORDERED that counsel for defendants All Nippon Airways, Co. Ltd., ANA Aircraft Technics, Co., Ltd., ANA Base Maintenance Technics, Co., Ltd., ANA Holdings, Inc., and All Nippon Airways Co., Ltd. shall, within 30 days from the date of this order, serve a copy of the order, together with a completed Information Sheet, upon the Special Referee Clerk in the Motion Support Office in Rm. 119 at 60 Centre Street, who is directed to place this matter on the calendar of the Special Referee's Part (Part SOR); and it is further
ORDERED I will enter a separate judgment in favor of defendants after receiving the report of the Special Referee and a motion to confirm the report.
This constitutes the decision and order of the Court.
Dated: July 5, 2018
SALIANN SCARPULLA, J.S.C.



Footnotes

Footnote 1: TSO C127a is a U.S. Federal Aviation Administration ("FAA") regulation regarding aircraft seat covers and fire retardancy.

Footnote 2: The complaint states that the Japanese Action was commenced in July 2007, but the ANA Companies assert that the Japanese action was commenced in December 2006. Kyowa brought a second action against ANA in May 2008 and the Tokyo District Court consolidated both lawsuits for trial.

Footnote 3: In the complaint in this action, Kyowa pleads these same allegations as a "fraud" claim.

Footnote 4: Kyowa sought information from the Office of the Inspector General of the U.S. Department of Transportation (the "DOT") regarding the FAA's handling of the TSO C127a labeling matter. As a result of Kyowa's information request, the FAA sent a letter with a memorandum attachment to the DOT, dated July 21, 2015, (the "FAA letter") which stated that the FAA "has not issued a TSOA for C127A, or for any other seat-related TSO to Kyowa or All Nappon Airways (ANA)." The FAA letter also confirmed that the FAA did not have oversight responsibility for Kyowa and ANA and that it sent a letter to JCAB briefing them on the matter.

Footnote 5: In support of its argument, Kyowa cited dicta in Beach v. Citigroup Alternative Invs. LLC, 2014 WL 904650 (S.D.NY Mar. 7, 2014). The language in the Beach case, however, was criticized by the more recent decision from the same court in Famular, 2017 WL 2470844, at *5 which noted that Beach relied upon outdated precedent. Therefore, I do not find Kyowa's reliance on Beach to be persuasive.

Footnote 6: I decline to impose additional sanctions against Kyowa's counsel as requested by defendants.